# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

No. 1:10-CR-70

United States of America

v.

Rogelio Dominguez Pineda

                              Defendant

**Report and Recommendation of United States Magistrate Judge**[1]

## I. Nature of the Case

This criminal action involves an alleged conspiracy to possess controlled substances with intent to distribute. Forty defendants are accused. The alleged conspiracy commenced in 2008, and continued until 2010. The quantities of controlled substances involved ("actual and ice" methamphetamine, mixtures and substances containing a detectable amount of methamphetamine and mixtures and substances containing a detectable amount of cocaine) are such that any conviction will carry a mandatory sentence of imprisonment of not less than ten years, up to life.

---

[1] This matter is before the undersigned pursuant to Referral Order No. RC-72.4 entered on March 16, 2009. The order enumerates specific duties of the magistrate judges in criminal actions assigned to United States District Judge Ron Clark. Section, 2.d., directs magistrate judges to "consider and determine all other pretrial motions." Because (a) a motion to disqualify defense counsel involves balancing two Sixth Amendment rights, and (b) magistrate judges lack authority to adjudicate felony criminal cases even with consent of the parties, the undersigned submits a report with a recommended disposition notwithstanding language to the contrary in the referral order.

## II. Motion to Disqualify Defense Counsel

The United States moves the court to enter an order disqualifying counsel of record for the lead defendant, Rogelio Dominguez Pineda ("Pineda"). The United States alleges that Pineda's attorney, James Tucker Graves, Esq. ("Graves"), has a conflict of interest because: (a) he has represented two co-conspirator defendants on related state court charges during the existence of the alleged conspiracy involved here, and (b) he is a witness to the conspiracy. Specifically, the government's motion avers that Graves represented co-defendant no. 2, Jonathan A. Cuadros-Zabala ("Cuadros-Zabala") and co-defendant no. 7, Aurelio Pineda-Moreno (a/k/a/ "Pelon"), in drug cases pending in Harris County, Texas, state courts in July, 2009. The United States further alleges that during its investigation of this case, and while an ongoing Title III wire intercept order was in place on Pineda's telephone, Graves was recorded speaking with Pineda at least 17 times. These conversations revealed that: (a) Pineda paid Graves to represent Cuadros-Zabala; (b) Pineda asked Graves to find out what charges were brought against "Pelon;" (c) Graves offered to represent "Pelon;" (d) Graves advised Pineda that "Pelon" could have been released because he was a "snitch;" and (e) Graves told Pineda "so just let everyone know to be careful."

Pineda did not respond to the government's motion. At an evidentiary hearing held on November 16, 2010, however, Graves argued in opposition to the motion. Graves asserted that no conflict of interest arises from prior representation because he has never represented Cuadros-Zabala or "Pelon." Graves further argued that no conflict of interest arises due to his status as a witness because: (a) the court will suppress the wiretap evidence on which the United States relies, and (b) in any event, his communications with Pineda are innocent in nature and in no way probabtive of the alleged conspiracy.

### III. The *Garcia* Hearing[2]

*A.    Prior Representation*

At the evidentiary hearing, the United States admitted that it has no evidence that Graves previously represented either Cuadros-Zabala or "Pelon". After filing its motion, the United States determined that the "Jonathon" who Graves represented in Harris County was Jonathan Abraham Pineda, not Jonathan Cuadros-Zabala. Abraham Pineda is located in Mexico, and is not a defendant in this action.[3] In addition, the United States produced no evidence that Graves represented "Pelon" in Harris County. Whatever charges resulted in "Pelon's" arrest were dropped, and he was released before any counsel appeared to represent him.

Given the government's allegations, the undersigned nevertheless: (a) advised Pineda of his constitutional right to the effective assistance of counsel; (b) carefully explained to Pineda the dangers of joint representation of co-defendants by the same counsel; (c) strongly recommended that Pineda avoid dual representation; (d) offered to continue the hearing until a later date in order that Pineda could consult with another, independent counsel about the wisdom of waiving his right to separate counsel; and (e) upon Pineda's request, appointed a CJA counsel to consult with Pineda concerning dual representation.

---

[2]    When considering motions to disqualify, federal courts conduct hearings of the type articulated in <u>United States v. Garcia</u>, 517 F.2d 272, 275 (5th Cir. 1975). The nature of such hearings is discussed in Section IV.*A*, *infra*.

[3]    The United States avers that Jonathon Abraham Pineda is, nonetheless, an unindicted co-conspirator, but presented no evidence confirming that assertion.

At the conclusion of the hearing, Pineda executed a written waiver of any conflict of interest on the part of his attorney, Graves, and expressed his desire that Graves continue to represent him in this case. Subsequently, Pineda's court-appointed CJA counsel filed a report again confirming that Pineda wishes to have Graves continue as his lawyer, while "retain[ing] his right to 'revoke' his waiver if circumstances surrounding the case change and he believes attorney Graves is not rendering conflict free representation as contemplated by his right to the effective assistance of counsel pursuant to the Sixth Amendment."

B.   *Attorney as Witness*

Based on the contents of 17 intercepted phone calls between Graves and Pineda, the United States asserts that Graves can be called to establish the existence of a conspiracy. The government further asserts that even if Graves is not actually called as a witness during the trial, recordings of the conversations between Graves and Pineda will be admitted, and Graves would become an unsworn witness whose "testimony" could create an untenable situation, prejudicial to both the government and Pineda.

As mentioned earlier, Graves argued that nothing in his recorded conversations with Pineda proves the alleged conspiracy, and the court will not, in any event, permit the recorded conversations to be admitted into evidence.

## IV.   Legal Standards

A.  *Garcia Hearings*

Because the Sixth Amendment guarantees the right to representation that is free from any conflict of interest, when "a defendant chooses to proceed with representation by counsel who has a conflict of interest, a district court must conduct what is commonly known as a '*Garcia* hearing' to ensure a valid waiver

by the defendant of his Sixth Amendment right." United States v. Brown, 553 F.3d 768, 799 (quoting United States v. Garcia-Jasso, 472 F.3d 239, 243 (5th Cir. 2006)). Such hearings "provide a means for a court to vindicate a defendant's constitutional right to counsel." Id.; United States v. Garcia, 517 F.2d 272, 275 (5th Cir. 1975), abrogated on other grounds by Flanagan v. United States, 465 U.S. 259, 263 & n.2 (1984). During such hearing, a district court must "ensure that the defendant: (1) is aware that a conflict of interest exists; (2) realizes the potential hazards to his defense by continuing with such counsel under the onus of a conflict; and (3) is aware of his right to obtain other counsel." United States v. Greig, 967 F.2d 1018, 1022 (5th Cir. 1992).

While a defendant may knowingly and intelligently waive conflicts of interest, the district court is allowed "substantial latitude" to refuse such waivers in cases of either actual or potential conflict. Wheat v. United States, 486 U.S. 153, 163 (1988); United States v. Gharbi, 510 F.3d 550, 553 (5th Cir. 2007) ("[T]here is a presumption in favor of a defendant's counsel of choice, but that presumption may be overcome by an actual conflict of interest, or by a showing of a serious potential for conflict."). Thus, a defendant's right to counsel is not absolute, and must not interfere with the court's administration of justice. Specifically:

> Notwithstanding the importance of the right to counsel of choice, that right is not absolute. In determining whether or not to disqualify defense counsel, the court must balance two Sixth Amendment rights: (1) the right to be represented by counsel of choice and (2) the right to a defense conducted by an attorney who is free of conflicts of interest . . . . *The need for fair, efficient and orderly administration of justice overcomes the right to counsel of choice where an attorney has an actual conflict of interest* . . . .

United States v. Ross, 33 F.3d 1507, 1523 (11th Cir. 1994) (emphasis added) (citing Wheat v. United States, 486 U.S. 153, 163 (1988) and United States v.

Casiano, 929 F.2d 1046, 1052 (5th Cir. 1991)). In other words, a defendant's right to counsel of his choice must yield to the higher interest of the effective administration of the courts, Gandy v. Alabama, 569 F.2d 1318 (5th Cir. 1978), and disqualification may occur even with a waiver of any conflict of interest, Wheat, 486 U.S. at 159. The determination of whether the defendant's Sixth Amendment right overrides the conduct of his attorney is committed to the trial court's discretion. United States v. Dinitz, 538 F.2d 1214, 1219 (5th Cir. 1976).

B.  *Multiple Representations*

The need for fair, efficient and orderly administration of justice overcomes the right to counsel of choice where an attorney has an actual conflict of interest, such as when he has previously represented a person who will be called as a witness against a current client at a criminal trial. Ross, 133 F.3d at 1523 (emphasis added) (citing Wheat v. United States, 486 U.S. 153, 163 (1988) and United States v. Casiano, 929 F.2d 1046, 1052 (5th Cir. 1991)). Factors found to be particularly relevant when analyzing a conflict based on prior representation include: (1) whether the attorney has confidential information that is helpful to one client but harmful to the other client; (2) whether and how closely related is the subject matter of the multiple representations; (3) how close in time the multiple representations are; and (4) whether the prior representation has been unambiguously terminated. United States v. Burns, 526 F.3d 852, 856 (5th Cir. 2008) (citation omitted).

C.  *Lawyer as Witness*

The Fifth Circuit has stated that "[m]otions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." In re American Airlines, Inc., 972 F.2d 605, 610 (5th Cir. 1992); see also In re Dresser Industries, Inc., 972 F.2d 540,

543 (5th Cir. 1992). Under 28 U.S.C. § 2071, district courts may adopt rules for the conduct of attorneys. A court must "consider the motion governed by the ethical rules announced by the national profession in the light of the public interest and the litigant's rights." American Airlines, 972 F.2d at 610. The norms embodied in the Model Rules and the Model Code are relevant "as the national standards utilized by this circuit in ruling on disqualification motions." Id. Federal courts also may adopt state or American Bar Association rules as their ethical standards, but whether and how these rules apply are questions of federal law. Horaist v. Doctor's Hosp. of Opelousas, 255 F.3d 261, 266 (5th Cir. 2001) (citing FDIC v. United States Fire Ins. Co., 50 F.3d 1304, 1312 (5th Cir. 1995)); American Airlines, 972 F.2d at 610. For example, in FDIC v. United States Fire Ins. Co., 50 F.3d 1304, 1311-12 (5th Cir. 1995), the Fifth Circuit determined that relevant state and national ethical standards to be the local rules, the Model Rules, the Model Code, and the Texas Rules.

The Local Rules of the Eastern District of Texas state that "the Rules Governing the State Bar of Texas shall serve as a guide governing the obligations and responsibilities of all attorneys appearing in this court," and include by reference the Texas Disciplinary Rules of Professional Conduct. E.D. Tex. Local Rule AT-2(a).

The Texas Disciplinary Rules of Professional Conduct state that a "lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client. See TEX. DISP. R. PROF. CONDUCT § 3.08(a). Section (b) provides that a lawyer is not to continue as an "advocate in a pending adjudicatory proceeding" if the lawyer believes that he will be "compelled to furnish testimony that will be substantially adverse to the lawyer's client," unless the client consents after "full disclosure."

Under Rule 3.08, the fact that a lawyer serves as both advocate and witness does not in itself compel disqualification. Tex. Disciplinary R. Prof'l Conduct 3.08(a); In re Sanders, 153 S.W.3d 54, 57 (Tex. 2004). Moreover, Rule 3.08 rarely is a basis for disqualification. In re Chu, 134 S.W.3d 459, 464 (Tex.App.-Waco 2004, orig. proceeding); May v. Crofts, 868 S.W.2d 297, 399 (Tex.App.-Texarkana 1993, orig. proceeding). As such, the party moving for disqualification must present evidence that the testimony of the lawyer is necessary and that it goes to an essential fact of the nonmovant's case. In re Chu, 134 S.W.3d at 464. Nonetheless, a trial court order that disqualifies a lawyer in order to prevent violation of Rule 3.08 is appropriate when warranted. Ayres, 790 S.W.2d at 556 n. 2.

ABA Model Rule 3.7 states that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness," unless the testimony relates to an uncontested issue or disqualification of the lawyer would be a substantial hardship on the client. MODEL RULES OF PROF'L CONDUCT R. 3.7(a).

The applicable disciplinary rule of the Model Code states that "[a] lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness," unless the testimony relates to an uncontested issue, a matter of formality, the nature and value of legal services, or disqualification of the lawyer would be a substantial hardship on the client. MODEL CODE OF PROF'L RESPONSIBILITY DR 5-101(b).

1. Unsworn Witness

An attorney acts as a "sworn witness" when he testifies at trial, under penalty of perjury. An attorney acts as an "unsworn witness" when his

relationship to his client results in his having first-hand knowledge of the events presented at trial. U.S. v. Locascio, 6 F.3d 924, 933 (2d Cir. 1993). In United States v. Reeves, 892 F.2d 1223, 1227 (5th Cir. 1990), a case in which defense counsel was recorded in two videotapes with the defendant, the Fifth Circuit found that since a party might seek to use those tapes at trial, defense counsel would be forced to either refrain from commenting on the tapes or serve as an unsworn witness from the lawyers' podium. Thus, the Fifth Circuit determined that the district court was well within its discretion to disqualify the defense counsel despite the waiver of defendant.

## V. Discussion

The United States's motion to disqualify Graves on the ground of a conflict of interest arising from his *prior representation of other defendants* lacks merit. The United States concedes that it has no evidence of prior representation of any co-defendant by Graves. None of the dangers of joint representation has been shown to exist presently. The only potential conflict that could arise in the future would be in the unlikely event that Jonathan Abraham Pineda would return from Mexico as a witness or newly indicted defendant at trial. Pineda has, in any event, waived any tangential conflict, if any, arising from Graves's prior representation, after being carefully advised and admonished by the court, and after consulting with an independent, court-appointed counsel. Consequently, this is not an instance when Pineda's right to counsel of his choice must yield to the higher interest of the effective administration of the courts.

The United States's motion to disqualify Graves on the ground of a conflict of interest arising from his status as a *potential witness* in the case is stronger. Evidence that Pineda paid Graves to represent another person (Jonathan Cuadros-Zabala) charged with a drug offense during the existence of the alleged

conspiracy is probative of an association of Pineda with others accused of committing drug offenses. Evidence that Graves offered to provide similar representation to a co-defendant, Aurelio Pineda-Moreno (a/k/a/ "Pelon"), has similar relevance. Evidence that Pineda and Graves were concerned that "Pelon" might be a "snitch" suggests that "Pelon" may have known of an agreement between Pineda and others to accomplish some unlawful purpose. Finally, evidence that Graves advised Pineda to "let *everyone* know to be careful" suggests that two or more persons may have willfully joined together in an agreement to accomplish some unlawful objective.

Graves, therefore, appears to be in the untenable position where he may be a sworn or unsworn witness whose testimony will be adverse to Pineda. As such, he has a disqualifying conflict of interest that overrides Pineda's proposed waiver. If the court disqualifies Graves, perhaps no conflict will ever materialize, but what evidence the court will allow may not be clear until the midst of trial. Consequently, this is an instance when Pineda's right to counsel of his choice must yield to the higher interest of the effective administration of the courts.

## VI.  Recommendation

The court should deny the United States's motion to disqualify to the extent it is based on an alleged conflict of interest arising from prior representation of other defendants.

The court should grant the United States's motion to disqualify to the extent it is based on a conflict of interest arising from counsel's status as a potential witness whose testimony is adverse to his client and lead defendant, Rogelio Dominguez Pineda.

## VII. Objections

Objections must be: (1) specific, (2) in writing, and (3) served and filed within fourteen (14) days after being served with a copy of this report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b), and 72(b).

A party's failure to object bars that party from: (1) entitlement to de novo review by a district judge of proposed findings and recommendations, see Rodriguez v. Bowen, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error of unobjected-to factual findings and legal conclusions accepted by the district court, see Douglass v. United Servs. Auto. Ass'n., 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

SIGNED this 7 day of December, 2010.

*Earl S. Hines*
Earl S. Hines
United States Magistrate Judge